UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESUS LOPEZ, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 21-cv-11353-ADB |
| ANGIODYNAMICS, INC. and NAVILYST MEDICAL, INC., | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Jesus Lopez alleges that he was injured by a defective medical device made by Defendants AngioDynamics, Inc. ("AngioDynamics") and Navilyst Medical, Inc. ("Navilyst," and, together with AngioDynamics, "Defendants"). [ECF No. 1-1]. Currently before the Court are Mr. Lopez's motion for remand, [ECF No. 21], and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 9]. For the reasons set forth below, Mr. Lopez's motion is DENIED, and Defendants' motion is GRANTED. Mr. Lopez's complaint is DISMISSED without prejudice.

I.  BACKGROUND

   A.  Factual Background

The following facts are taken from the operative complaint, [ECF No. 1-1], the factual allegations of which are assumed to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Mr. Lopez is a Texas resident. [ECF No. 1-1 ¶ 2]. AngioDynamics and Navilyst are both Delaware corporations. [Id. ¶¶ 3–4].

In 2003, Horizon Medical Products ("Horizon") received clearance to market and sell a vascular access device called the Triumph VTX Port with LiveValve Catheter (the "Triumph"). [ECF No. 1-1 ¶ 15]. Shortly thereafter, Horizon merged with Rita Medical Systems ("Rita"), which was being acquired by AngioDynamics. [Id. ¶ 16]. AngioDynamics then sold a different vascular access device, the Vortex port system (the "Device"), under the Triumph's regulatory authorization. [Id. ¶¶ 17–18]. The Device is designed to deliver medication, intravenous fluids, parenteral nutrition solutions, and blood products directly into the bloodstream. [Id. ¶ 21]. It consists of two parts: an injection port and a silicone catheter. [Id. ¶ 23]. Because of an alleged design and manufacturing defect, the catheter sometimes fractures, which can lead to devastating results. [Id. ¶¶ 26–32, 34–36]. Before Mr. Lopez was implanted with the Device, Defendants were aware that catheters were fracturing and pieces were migrating through patients' bodies, with catastrophic consequences. [Id. ¶¶ 36–42].

On June 26, 2019, Mr. Lopez was implanted with the Device at a hospital in Texas. [ECF No. 1-1 ¶ 47]. On July 9, 2019, the Device, which was leaking chemotherapy medication because of catheter failure, was surgically removed from Mr. Lopez at a different hospital in Texas. [Id. ¶ 49]. As a result of this ordeal, Mr. Lopez experienced significant mental and physical pain and suffering, sustained physical injuries and permanent physical deformities, underwent (and will undergo additional) corrective surgery, and suffered financial and economic losses (including medical expenses and lost wages). [Id. ¶ 56].

### B. Procedural Background

Mr. Lopez filed this suit in Middlesex County Superior Court on July 4, 2021, [ECF No. 1-3], and filed the operative complaint in that court on July 29, 2021, [ECF No. 1-1]. On August 19, 2021, Defendants removed the case. [ECF No. 1]. On August 26, 2021, Defendants moved to dismiss for lack of personal jurisdiction. [ECF No. 9]. Mr. Lopez opposed on September 9, 2021, [ECF No. 16], and Defendants replied on September 28, 2021, [ECF No. 23]. Additionally, Mr. Lopez filed a motion for remand on September 16, 2021, [ECF No. 21], which Defendants opposed on September 30, 2021, [ECF No. 24].

## II. MR. LOPEZ'S MOTION FOR REMAND

Defendants removed this case based on diversity jurisdiction. See [ECF No. 1 ¶ 5]. "Federal diversity jurisdiction is available in cases arising between citizens of different states in which the amount in controversy exceeds $75,000." Rizzi v. 178 Lowell St. Operating Co., 180 F. Supp. 3d 66, 67 (D. Mass. 2016) (citing 28 U.S.C. § 1332(a)). Mr. Lopez admits that the diversity and amount-in-controversy requirements are satisfied here but maintains that because Defendants are Massachusetts citizens, the "forum defendant rule" precludes removal. [ECF No. 22 at 3 (emphasis omitted)]. Defendants counter that the forum defendant rule has no bearing here because they are not Massachusetts citizens. [ECF No. 24 at 9–17].

Removal premised on diversity jurisdiction is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "This is known as the 'forum defendant rule.'" DaSilva v. Baader Ger., 514 F. Supp. 3d 393, 397 (D. Mass. 2021) (quoting Rizzi, 180 F. Supp. 3d at 68). "A corporation's citizenship, for diversity jurisdiction purposes, is both the state where it is

3

incorporated and the state 'where it has its principal place of business.'" Celli v. Greenwich Ins. Co., 478 F. Supp. 3d 93, 95–96 (D. Mass. 2020) (quoting 28 U.S.C. § 1332(c)(1)).

It is undisputed that Defendants are incorporated in Delaware. See [ECF No. 1-1 ¶¶ 3–4; ECF No. 1-2 ¶¶ 3, 7]. Accordingly, the forum defendant rule precludes removal only if either AngioDynamics or Navilyst has its principal place of business in Massachusetts. For the reasons that follow, the Court finds that each has its principal place of business in New York.

> Several years ago, the Supreme Court established beyond any doubt that federal courts must employ the "nerve center" test to determine the location of a corporation's principal place of business. The test is straightforward. A corporation's "nerve center" (i.e., its principal place of business) is the particular location from which its "officers direct, control, and coordinate the corporation's activities." Generally speaking, this will "be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."

Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016) (citations omitted) (quoting Hertz Corp. v. Friend, 559 U.S. 77, 80–81, 92–93 (2010)). "At its heart, the nerve center test is an inquiry to find the one location from which a corporation is ultimately controlled." Id. at 41.

Based on the nerve center test, it is clear that Defendants' principal places of business are in New York. As noted in an affidavit filed by Stephen A. Trowbridge, AngioDynamics' Executive Vice President and CFO: (1) Navilyst is a wholly-owned subsidiary of AngioDynamics, [ECF No. 1-2 ¶ 6]; (2) Navilyst's U.S. operations are "entirely carried out and controlled by AngioDynamics," [id. ¶ 9]; (3) the people who work for Navilyst are AngioDynamics' employees, [id. ¶ 10]; (4) AngioDynamics' chief executives (including its CEO, CFO, and General Counsel) and its accounting, legal, and human resources departments are based in New York, [id. ¶ 8]; and (5) "[a]ll significant corporate decisions," for both AngioDynamics and Navilyst, are made, or reviewed and approved, by executives based in New

4

York, [id. ¶ 11].[1]  Given the foregoing, the Court finds that Defendants are "ultimately controlled" from New York.  See Harrison, 811 F.3d at 41.

Mr. Lopez advances evidence purportedly demonstrating that Defendants have their principal places of business in Massachusetts, [ECF No. 22 at 4–8], but the Court has already rejected nearly-identical evidence in four nearly-identical cases, see Memorandum and Order at 5, Mora v. AngioDynamics, Inc., 21-cv-11352 (D. Mass. Oct. 28, 2021), ECF No. 25; Memorandum and Order at 5, Walters v. AngioDynamics, Inc., No. 21-cv-11225 (D. Mass. Oct. 28, 2021), ECF No. 27; Pettit v. AngioDynamics, Inc., No. 21-cv-10568, 2021 WL 4441261, at *3–4 (D. Mass. Sept. 28, 2021); Harness v. AngioDynamics, Inc., No. 21-cv-10233, 2021 WL 4441260, at *3–4 (D. Mass. Sept. 28, 2021),[2] and is no more persuaded this time around.  At bottom, while Mr. Lopez avers that Defendants' principal places of business are in Massachusetts, see, e.g., [ECF No. 22 at 2, 7], the evidence belies his position.  Because Defendants' principal places of business are not in Massachusetts, the forum defendant rule does not preclude removal.  Mr. Lopez's motion for remand, [ECF No. 21], is therefore DENIED.

---

[1] In his opposition to Defendants' motion to dismiss, Mr. Lopez urges the Court to disregard Mr. Trowbridge's affidavit because it contains controverted facts. [ECF No. 16 at 18–19].  This argument fails, however, because the evidence that Mr. Lopez points to does not, in fact, contradict the facts in the affidavit.  Accordingly, the Court may (and will) consider Mr. Trowbridge's affidavit.

[2] Judge Casper has also rejected nearly-identical arguments and evidence in a nearly-identical case.  Kingston v. AngioDynamics, Inc., No. 21-cv-10234, 2021 WL 3022320, at *4 (D. Mass. July 16, 2021); see Electronic Order, Kingston v. AngioDynamics, Inc., No. 21-cv-10234 (D. Mass. Oct. 4, 2021), ECF No. 41 (denying reconsideration of order dismissing case).

### III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The parties dispute whether Defendants are subject to the Court's personal jurisdiction. See [ECF No. 10; ECF No. 16]. For the reasons set forth below, the Court finds that they are not.

#### A. Legal Standard

Mr. Lopez bears the burden of establishing that jurisdiction exists over Defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26). "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts" supporting jurisdiction. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (alteration in original) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant only to the extent that they are uncontradicted. See Prairie Eye Ctr., 530 F.3d at 26; Platten, 437 F.3d at 134.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the

forum state.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). "Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution." Kingston, 2021 WL 3022320, at *5 (citing Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)).

### B.    Jurisdiction Under the Massachusetts Long-Arm Statute

"Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3 of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside of the Commonwealth. Mass. Gen. Laws ch. 223A, § 3.

Mr. Lopez relies on § 3(a) of the Massachusetts long-arm statute, see [ECF No. 16 at 12–13], which provides for the exercise of personal jurisdiction based on a defendant's "transacting any business in this commonwealth." Mass. Gen. Laws. ch. 223A, § 3(a). Section 3(a)'s "reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358 N.E.2d 437, 439 (Mass. 1976)). "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (second and third alterations in original)

(quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)). "The 'arising from' clause in [the Massachusetts long-arm statute] is to be generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp., 246 F. Supp. 2d at 112. "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (alteration in original) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994)). The arising from inquiry asks whether "the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Id. (alteration in original) (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

      Defendants transact business in Massachusetts. They have an office in Marlborough, Massachusetts and appear to have multiple employees who work here. See [ECF No. 16-4 at 89 (listing Marlborough address); ECF No. 16-10 (LinkedIn profiles indicating that certain employees work in Massachusetts)]. Mr. Lopez maintains that his claims arise from Defendants' business activities in Massachusetts because Defendants' marketing, scientific and clinical affairs, and regulatory activities take place in Massachusetts and that but for those activities, "the [Device] would never have reached [him], let alone precipitated his injuries." [ECF No. 16 at 17]. Mr. Lopez cannot, however, rely on self-serving, conclusory statements to establish jurisdiction. See Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020). Rather, he must adduce specific evidence suggesting that Defendants' business activities in Massachusetts were the first step in a chain of events leading to his injuries. He has failed to do so here.

The Court has already rejected the very same evidence that Mr. Lopez relies on in two nearly-identical cases, see Memorandum and Order at 8–9, Mora v. AngioDynamics, Inc., No. 21-cv-11352 (D. Mass. Oct. 28, 2021), ECF No. 25; Memorandum and Order at 8–10, Walters v. AngioDynamics, Inc., No. 21-cv-11225 (D. Mass. Oct. 28, 2021), ECF No. 27, and declines to reach a different result here. In sum, although Mr. Lopez's evidence demonstrates that Defendants have a presence in Massachusetts and conduct some business here, including certain marketing, research and development, and regulatory activities, it fails to show that Defendants conducted marketing, scientific and clinical affairs, and regulatory activities *related to the Device* in Massachusetts. As such, Mr. Lopez relies on his attorneys' arguments and unsworn representations, e.g., [ECF No. 16 at 11 (asserting, without citation, that Defendants "conduct business activities in Massachusetts related to the [Device], including research, development, design, testing, post-market surveillance, marketing, and regulatory compliance activities")], which are insufficient to establish jurisdiction, see Chen, 956 F.3d at 56. Notably, Mr. Trowbridge's affidavit establishes that all significant corporate decisions are made in New York and that all U.S. products (including the Device) are manufactured in New York. [ECF No. 1-2 ¶¶ 11–12]. Against this backdrop, Mr. Lopez has failed to show the required link between his claims and Defendants' Massachusetts contacts. Accordingly, the Court does not have jurisdiction over Defendants under the Massachusetts long-arm statute.

    **C.**    **Jurisdiction Under the U.S. Constitution**

Although the Court could stop the analysis here, it will briefly consider jurisdiction under the U.S. Constitution in the interests of a comprehensive record.

Courts may exercise two types of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment: general and specific. The Court discusses each in turn.

1.      General Jurisdiction

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'"  Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  Although the "paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business," in some cases "a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered 'may be so substantial and of such a nature as to render the corporation at home in that State.'"  Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19).

AngioDynamics and Navilyst are both incorporated in Delaware, and the Court has already found that they have their principal places of business in New York.  Accordingly, the Court can exercise general personal jurisdiction over them only if their "general business operations" here are "so substantial and of such a nature as to render [them] at home" in Massachusetts.  Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19).  They are not.  See [ECF No. 1-2 ¶ 11 ("All significant corporate decisions for AngioDynamics and Navilyst are made by, or subject to review and approval by, executives based out of AngioDynamics' New York offices.")]; cf. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952) (finding company subject to general jurisdiction in Ohio where company had ceased Philippines operations during World War II and company president instead conducted business from an office in Ohio).[3]

---

[3] The Supreme Court has described Perkins as the "textbook case of general jurisdiction." Daimler, 571 U.S. at 129.

2. Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). For the Court to exercise specific personal jurisdiction over Defendants consistent with the Due Process Clause, each of three conditions must be satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the [Defendants'] forum-state activities. Second, the [Defendants'] in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the [Defendants'] involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, Inc., 46 F.3d at 144). The inquiry "is 'not susceptible [to] mechanical application,'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting Kulko v. Super. Ct. of Cal., 436 U.S. 84, 92 (1978)), rather, "[e]ach case requires an individualized weighing of the material facts," United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485–86 (1985)).

Mr. Lopez's claims do not arise out of, or relate to, Defendants' Massachusetts contacts. As noted above in connection with the Massachusetts long-arm statute, Mr. Lopez has failed to point to evidence connecting Defendants' *Device-related* activities to Massachusetts. Further, all key events related to this case occurred elsewhere. Defendants manufactured the Device in New York, [ECF No. 1-2 ¶ 17], and Mr. Lopez (1) lives, (2) was implanted with the Device, and (3) was allegedly injured and treated, in Texas, [ECF No. 1-1 ¶¶ 2, 47, 49]. Thus, there is no perceptible connection between the work that Defendants do in Massachusetts and Mr. Lopez's claims. See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (noting

11

that for specific personal jurisdiction to attach, "there must be 'an affiliation between the forum and the underlying controversy'" (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty., 137 S. Ct. 1773, 1780 (2017))).  Absent such a connection, Mr. Lopez has failed to satisfy the relatedness prong of the specific personal jurisdiction analysis.  See Memorandum and Order at 11, Mora v. AngioDynamics, Inc., No. 21-cv-11352 (D. Mass. Oct. 28, 2021), ECF No. 25 (same finding with Texas plaintiff); Memorandum and Order at 12, Walters v. AngioDynamics, Inc., No. 21-cv-11225 (D. Mass. Oct. 28, 2021), ECF No. 27 (same finding with Texas plaintiff); Pettit, 2021 WL 4441261, at *7–8 (same finding with West Virginia plaintiff); Harness, 2021 WL 4441260, at *6 (same finding with Tennessee plaintiff); Kingston, 2021 WL 3022320, at *7–8 (same finding with Kentucky plaintiff).

Because a plaintiff seeking to establish specific personal jurisdiction must satisfy all three prongs, see Daynard, 290 F.3d at 60, and Mr. Lopez has failed to satisfy the first, the Court need not consider the other two.

### D.    Jurisdiction Via Service of Process

Mr. Lopez argues that because Defendants were served in Massachusetts, they are subject to personal jurisdiction here.  [ECF No. 16 at 19–23].  The Court has already rejected this argument in two nearly-identical cases, see Memorandum and Order at 12, Mora v. AngioDynamics, Inc., No 21-cv-11352 (D. Mass. Oct. 28, 2021), ECF No. 25; Memorandum and Order at 13–14, Walters v. AngioDynamics, Inc., No. 21-cv-11225 (D. Mass. Oct. 28, 2021), ECF No. 27, and does so here as well.  It suffices to say that adopting Mr. Lopez's view of jurisdiction via service would render the Supreme Court's decision in Daimler obsolete, which is an untenable result.

### E.        Jurisdictional Discovery

Mr. Lopez seeks jurisdictional discovery if the Court finds that he has failed to demonstrate jurisdiction over Defendants. [ECF No. 16 at 23–26]. The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" Swiss Am. Bank, 274 F.3d at 625 (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)). "However, that entitlement is not absolute. . . . [E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Id. at 625–26 (citations and internal quotation marks omitted). Further, "[i]n addition to making a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" Rain ex rel. Crandall v. Conn. Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

Here, Mr. Lopez has failed to make a "colorable case for the existence of" personal jurisdiction, and the Court declines to exercise its discretion to grant jurisdictional discovery. Swiss Am. Bank, 274 F.3d at 625 (citations and internal quotation marks omitted). Although Mr. Lopez's arguments in favor of jurisdictional discovery are more compelling than those of the plaintiffs in Kingston, Pettit, and Harness, the Court does not reach a different result here, particularly given that discovery is unlikely to result in a finding that the Court has personal jurisdiction over Defendants. See Kingston, 2021 WL 3022320, at *9 (denying jurisdictional discovery because plaintiff's "argument that certain operations occurred in Defendants'

Massachusetts location, and that these operations led to the ultimate—and allegedly flawed—design of the [Device], which led to its eventual manufacture in New York, which led to its distribution to and subsequent harm in Kentucky, is too tenuous to state a colorable claim"); see also Memorandum and Order at 12–13, Mora v. AngioDynamics, Inc., No. 21-cv-11352 (D. Mass. Oct. 28, 2021), ECF No. 25; Memorandum and Order at 14–15, Walters v. AngioDynamics, Inc., No. 21-cv-11255 (D. Mass. Oct. 28, 2021), ECF No. 27.  Accordingly, Mr. Lopez's request for jurisdictional discovery is DENIED.

## IV.  CONCLUSION

For the reasons set forth above, Mr. Lopez's motion for remand, [ECF No. 21], is DENIED, and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 9], is GRANTED.  Mr. Lopez's complaint, [ECF No. 1-1], is DISMISSED without prejudice.

**SO ORDERED.**

October 28, 2021                                      /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE